IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| **Justin Schimandle,** Plaintiff, v. **DeKalb County Sheriff's Office, Detective Josh Duehning, in his individual capacity,** Defendants. | No.: 21-cv-50477<br><br>Honorable Iain D. Johnson<br>Courtroom: 5200<br><br>Magistrate Judge Margaret J. Schneider<br>Courtroom: 5300 |

### DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

NOW COME Defendants, Detective Josh Duehning and the DeKalb County Sheriff's Office, by and through their attorneys, Ekl, Williams & Provenzale, LLC, and for their Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) state as follows:

### INTRODUCTION

Plaintiff alleges that he was falsely arrested and maliciously prosecuted for the offense of battery on a minor, a student at the school where Plaintiff was employed as the Dean. Accordingly, Plaintiff has sued Detective Josh Duehning and the DeKalb County Sheriff's Office for a §1983 claim of false arrest and an Illinois state law claim of malicious prosecution. Plaintiff brings these claims despite the fact that the incident that led to Plaintiff's arrest was captured on video, an arrest warrant was issued for Plaintiff's arrest based on a judicial finding of probable cause, Detective Duehning did not arrest Plaintiff, and Plaintiff was only detained temporarily at the DeKalb County Sheriff's Office while being processed on the arrest warrant. Plaintiff does not allege that Detective Duehning fabricated any evidence against him, concealed exculpatory evidence, or engaged in any misconduct to either obtain an arrest warrant for his arrest or to commence criminal charges against

him. To the contrary, Plaintiff's First Amended Complaint centers around the theory that despite the video evidence, Detective Duehning should have accepted Plaintiff's claim that he was acting in self-defense when he grabbed a student, carried the student through a door, and brought the student down to the ground, and therefore, should not have filed charges against Plaintiff for battery.

Defendants initially filed a Motion to Dismiss the First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. See Dkt. 26. One of the arguments presented in that Motion was that Plaintiff could not state a cause of action for false arrest because he was only detained pursuant to an arrest warrant and therefore, he did not have a Fourth Amendment claim. Defendants relied upon the Seventh Circuit's decision in *Bianchi v. McQueen*, 818 F.3d 309 (7th Cir. 2015) in support of this argument. See Dkt. 26, pp. 6-7. In denying the Motion to Dismiss, the Court held that *Bianchi* was no longer good law in light of the Supreme Court's decision in *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017) ("*Manuel I*"). See Dkt. 38. In denying the Motion, the Court ordered Defendants to answer the First Amended Complaint but also invited Defendants to file a Rule 12(c) motion, if grounds for such a motion existed. Id., pp. 4-5.

While it is Defendants' position that the narrowly tailored holding of *Bianchi* still survives after *Manuel I*, there are also several other grounds for entering judgment in favor of Defendants. Initially, Plaintiff's own allegations establish that there was probable cause to arrest Plaintiff for battery. Moreover, at the very least, there was arguable probable cause for Plaintiff's arrest and therefore, Detective Duehning is entitled to qualified immunity. Lastly, both causes of action are factually insufficient given that Plaintiff does not allege that he suffered any damages during his extremely brief detention, which is required for a false arrest claim, and Plaintiff does not allege that

Detective Duehning acted with any type of malice required for a malicious prosecution claim.

**ARGUMENT**

**I.    APPLICABLE PLEADING STANDARDS**

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment after the parties have filed a complaint and an answer, and the pleadings are closed. A motion for judgment on the pleadings is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Gil v. City of Milwaukee*, 850 F.3d 335, 339 (7th Cir. 2017). A complaint must contain sufficient factual allegations to demonstrate a plausible entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual assertion." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). According to *Iqbal*, once the pleader's conclusions are disregarded, a court should determine if the "well-pleaded factual allegations....plausibly give rise to an entitlement of relief." *Id.* at 679.

**II.   PLAINTIFF'S ALLEGATIONS[1]**

Plaintiff was the Dean of Students at Kishwaukee Education Consortium ("KEC") in Malta, Illinois. Dkt. 25, ¶7. On September 26, 2019, Plaintiff was informed that one of the students at KEC, C.G., was using a vaping device in violation of school rules. Id., ¶¶8-9. Subsequently, an "incident" occurred during which C.G. acted aggressively towards Plaintiff and Plaintiff restrained C.G. Id., ¶10. The Associate Principal of KEC called the DeKalb County Sheriff's Office to report the incident and Detective Duehning was assigned to the case. Id., ¶11.

---

[1]Defendants' Answer to these allegations has been filed. See Dkt. 40. However, for purposes of this Motion only, these allegations are being accepted as true.

There is a surveillance video of the incident that occurred between Plaintiff and C.G. Id., ¶12. While Plaintiff did not attach a copy of the video to his Complaint, he alleges that the video establishes that C.G was the aggressor during the incident between Plaintiff and C.G. and that Plaintiff acted reasonably in defending himself when he restrained C.G. Id., ¶13. There was also a cell phone video of the incident between Plaintiff and C.G. showing Plaintiff "leading C.G. through the doorway of KEC's gym to its foyer." Id., ¶14. Again, Plaintiff fails to attach a copy of this video but claims that this video shows that Plaintiff used his forearm and elbow, not C.G.'s body, to open the door to the foyer when he led C.G. through the door. Id., ¶14.

On October 15, 2019, Detective Duehning interviewed Plaintiff about the incident with C.G. Id., ¶16. During that interview, Plaintiff admitted that he "bear hugged" C.G., held C.G. in a "bear hug" as he walked him through a set of doors, and that C.G. and Plaintiff fell to the ground. Id., ¶16(m), (n), (o). Detective Duehning noted in his report that Plaintiff's description of what occurred was consistent with the surveillance video. Id., ¶17. Plaintiff informed Detective Duehning that he placed C.G. in a bear hug out of fear for his safety and in response to C.G. trying to reach into his pockets. Id., ¶16(k)-(m). According to Plaintiff, his use of force against C.G. was authorized by statute and was a reasonable and necessary use of force to maintain Plaintiff's safety. Id., ¶29.

During his investigation, Detective Duehning also interviewed other employees at KEC. Id., ¶¶18-27. Four of those employees observed Plaintiff holding onto C.G. on the ground. Id., ¶¶18-25. One of the employees stated that he saw Plaintiff carry C.G. out of the commons area in a "bear hug" and that they ended up on the floor. Id., ¶26. Detective Duehning noted in his reports that the witnesses' statements were consistent with the surveillance video. Id, ¶19, 21, 23, 25, 27. The Complaint neglects to mention C.G's description of the incident between himself and Plaintiff.

Detective Duehning submitted affidavits in support of an arrest warrant. Id., ¶31. Those affidavits alleged that: Plaintiff caused bodily harm to C.G. and made physical contact of an insulting and provoking nature to C.G while carrying C.G. and falling on top of C.G. with his body weight (Counts I and II); and that Plaintiff caused bodily harm to C.G. and made physical contact of an insulting and provoking nature with C.G. while carrying C.G. and using C.G.'s body to open a door, striking C.G's head and side into the door(Count III and IV). Id., ¶¶32-39. Plaintiff alleges that Detective Duehning had no probable cause to believe that Plaintiff had committed a criminal offense. Id., ¶30. Plaintiff also alleges that the affidavits in support of an arrest warrant were "false" because Detective Duehning should have known that Plaintiff had the authority to restrain and remove C.G. and that Plaintiff did not "knowingly" fall onto C.G. Id., ¶¶33, 35, 37, 39.

A DeKalb County judge made a finding of probable cause on the battery charges and issued an arrest warrant for Plaintiff. Id., ¶40; See also, Arrest Warrant, attached hereto as Exhibit A[2]. As a result, Plaintiff turned himself into the DeKalb County Sheriff's Office where he was handcuffed and detained. Id., ¶41. On July 13, 2021, after a bench trial commenced, Plaintiff was found not guilty of the battery charges on a motion for directed finding. Id., ¶39.

Plaintiff claims that he was terminated from his employment and suffered lost wages, lost opportunities, reputational harm and severe emotional distress as a result of his arrest and charges. Id., ¶45. Plaintiff does not allege that he suffered any injuries during his brief detention at the DeKalb County Sheriff's Office.

---

[2] Plaintiff failed to attach a copy of the arrest warrant to his First Amended Complaint. However, this Court may take judicial notice of the contents of state court orders and decrees without converting this motion into a motion for summary judgment. *See, e.g., ABN Amro, Inc. v. Capital Int'l Ltd.,* 04 C 3123, 2007 WL 845046 *9, (J. Filip, N.D. Ill. March 16, 2007) ("Judicial notice is most frequently used for noticing the contents of court records such as judicial orders or decrees.").

**III. PLAINTIFF FAILS TO STATE A CAUSE OF ACTION AGAINST DETECTIVE DUEHNING FOR FALSE ARREST.**

    **A.    Plaintiff's Processing At the Sheriff's Office Pursuant to an Arrest Warrant Does Not Support a Cause of Action For False Arrest.**

Plaintiff acknowledges that an arrest warrant was issued for his arrest and then he was permitted to turn himself into the Sheriff's Office, rather than being arrested. See Dkt. 25, ¶40-41. Initially, the validity of an arrest warrant is generally presumed. *Leaver v. Shortess*, 844 F.3d 665, 669 (7th Cir. 2016). That presumption may be overcome by a showing that the officer who sought the warrant "intentionally or recklessly withheld material facts from the warrant-issuing judge." *Id.* While Plaintiff alleges that the affidavits submitted in support of the arrest warrantwere false because Detective Duehning should have known that Plaintiff had authority to retrain C.G. and that Plaintiff did not have the requisite mental state of "knowingly"making physical contact with C.G, Plaintiff has not alleged any facts to suggest that Detective Duehning omitted or concealed any material facts from the judge that issued the warrant. Essentially, Plaintiff argues that Detective Duehning never should have presented the affidavits to the judge because he had an obligation to simply accept Plaintiff's self-defense explanation as true.

Moreover, pursuant to Plaintiff's own allegations, Plaintiff was not actually arrested by Detective Duehning. To the contrary, Plaintiff alleges that he was permitted to turned himself in at the DeKalb County Sheriff's Office for processing after the arrest warrant was issued. See Dkt. 25, ¶¶40-41. While Plaintiff alleges that he was temporarily detained when he was processed, that processing, pursuant to an arrest warrant, is insufficient to state a cause of action for a Fourth Amendment false arrest claim. In their Motion to Dismiss, Defendants argued that Plaintiff's false arrest claim must fail pursuant to the Seventh Circuit's holding in *Bianchi v. McQueen*, that an arrest pursuant to a formal legal process, such as an arrest warrant, is only a claim for malicious

prosecution, not false arrest. 818 F.3d 309, 322 (7th Cir. 2015). In denying the Motion, the Court pointed to Supreme Court's decision in *Manuel I* and ruled that based upon that decision, *Bianchi* was no longer good law. Dkt. 38, p. 4. While Defendants agree that in *Manuel I* the Supreme Court held that the time that a plaintiff spends in custody after legal process and until conviction is a Fourth Amendment unlawful detention case, Defendants disagree that the holding in *Manuel I* completely abrogates *Bianchi*. Although the time spent in custody before a conviction is now properly brought under the Fourth Amendment, rather than the due process clause, *Manuel I* does not stand for the proposition that the mere temporary detention and processing of an individual pursuant to an arrest warrant can sustain a claim for a false arrest under the Fourth Amendment.

In *Manuel I,* the plaintiff was arrested, a court found probable cause to detain him pending trial, and plaintiff was held in pre-trial detention for seven weeks until the charges were dismissed. *Id.* at 915-916. To the contrary, the factual scenario in *Bianchi* is directly comparable to the allegations in the instant case. Just as in *Bianchi*, an arrest warrant was issued by a court, the Plaintiff went to the Sheriff's Office on his own accord, the Plaintiff was briefly detained and processed at the Sheriff's office ,and then released on bond. 818 F.3d at 315. Just as in *Bianchi*, and unlike in *Manual I*, the Plaintiff was not subjected to any actual pre-trial detention. Therefore, while *Manual I* clarified the type of constitutional claim that can be brought by an individual subjected to pre-trial detention without probable cause, *Manuel I* did not effect either the rationale or ultimate holding in *Bianchi*. Specifically, the holding in *Bianchi*, that a plaintiff has not suffered a Fourth Amendment injury if the plaintiff is released on bond pursuant to an arrest warrant rather than being seized and detained, remains good law. *Id.* at 322. In fact, *Bianchi* addressed the alternative argument that an arrest pursuant to legal process could qualify as a Fourth Amendment violation and went on to rule that even if an arrest pursuant to an arrest warrant was cognizable as

a Fourth Amendment violation, the defendants were entitled to qualified immunity because the plaintiffs were released on bond, were not detained, and did not suffer a Fourth Amendment injury. *Id.* at 323.

Post-*Manuel I,* the Seventh Circuit had the opportunity to address whether *Bianchi* is still good law. In *Lewis v. City of Chicago*, 914 F.3d 472, 476-477 (7th Cir. 2019), the court, in accordance with *Manuel I,* held that the plaintiff's constitutional claim for the two years he spent in pre-trial detention fell under the Fourth Amendment, rather than the Due Process Clause. *Lewis*, just like *Manuel I*, addressed whether unlawful detention remained a Fourth Amendment violation after a judicial finding of probable cause. *Id.* However, *Lewis* is not factually similar to *Bianchi* which is further demonstrated by the fact that the Seventh Circuit did not address *Bianchi* in *Lewis* or recognize a need to reconcile the two opinions.

Regardless of the holding in *Manuel I* that a detention pursuant to legal process fails under the Fourth Amendment, the fact still remains that it is undisputed that Plaintiff, just like the plaintiff in *Bianchi*, suffered no Fourth Amendment injury. Despite the allegations in the Complaint that Plaintiff's damages include "lost wages, lost opportunity, reputational harm, severe emotional distress," there is no legal authority for the recovery of such damages based on a Fourth Amendment claim when a plaintiff turns himself pursuant to an arrest warrant and is only detained briefly. Damages for a false arrest claim only cover the actual period of detention. See *Fox v. Hayes*, 600 F.3d 819, 846 (7th Cir. 2010) (court held that the plaintiff was only entitled to damages for the 36 hours he spent in custody prior to a judicial finding of probable cause and ordered a remittitur from a $1.7 million jury award to $16,000). Plaintiff has not alleged that he suffered any injury for the brief time that he was processed at the Sheriff's office before being released on bond.

**B.      According to the Facts Pled in the Complaint, There Was Probable Cause to Arrest Plaintiff for Battery.**

To prevail on a claim of false arrest, Plaintiff must show that there was no probable cause for his arrest. *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012). "Probable cause to arrest is an absolute defense to any claim under Section 1983 against a police officer for wrongful arrest." *Id* (quoting *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir 2006)). Probable cause exists if "at the time of the arrest, the facts and circumstances within the officer's knowledge...are sufficient to warrant a prudent person, or one of reasonable caution, in believing, the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Id* (*quoting Gonzalez v. City of Elgin*, 578 F.3d 526, 537 (7th Cir. 2009). Probable cause only "requires that there is a probability or substantial chance that criminal activity exits; it does not require that the existence of criminal activity be more likely true than not true." *Thayer*, 705 F.3d at 246 (quoting *Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1056-57 (7th Cir. 2011)).

A police officer's probable cause determination depends on the elements of the applicable criminal statute. *Thayer*, 705 F.3d at 247 (quoting *Stokes v. Bd. of Educ. of the City of Chi,* 599 F.3d 617, 622 (7th Cir. 2010)) "The existence of probable cause...depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law." *Abbott v. Sangamon Cty, Ill,* 705 F.3d 706, 715 (7th Cir. 2013). Probable cause turns on whether a reasonable person in the officers' shoes, knowing what the plaintiff did, would have believed that the plaintiff violated the law. A*rmstrong v. Village of Bellwood,* 18-cv-05919, 2021 WL 148802 *7(J. Durkin, N.D. Ill, January 15, 2021)(holding that plaintiff's defense to the underlying criminal charge that her physical contact was minimal and she was acting in defense of her son did not negate probable cause.) While probable cause requires more than a bare suspicion of criminal activity, it does not require

evidence sufficient to support a conviction. *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000).

A battery in Illinois occurs where a person "knowingly without any legal justification by any means (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a). In the Complaint, Plaintiff acknowledges that he placed C.G. in a "bear hug", that he walked C.G. through a set of doors while holding him in a "bear hug", and that he and C.G. fell to the ground. See Dkt. 25, ¶¶10, 16. Plaintiff also acknowledges that other employees at the school were interviewed and advised Detective Duehning that they saw Plaintiff carrying C.G. in a bear hug and saw Plaintiff restraining C.G. on the ground. See Dkt. 25, ¶¶17-27. These allegations, along with the surveillance video, all demonstrate that there was more than sufficient probable cause for Plaintiff's arrest for battery.

Plaintiff alleges that there was not probable cause because his use of force was in self-defense and therefore, justified. Dkt. 25, ¶29. According to the theory advanced in the Complaint, Detective Duehning was obligated to accept Plaintiff's version of events as being true and by doing so, reach the conclusion that Plaintiff did not commit the offense of battery on C.G. However, this theory is unsupported by legal authority. "The existence of a legal justification for a battery is not an element of the offense, but rather is an affirmative defense." *McBride v. Grice*, 576 F.3d 703, 707 (7th Cir. 2009). Although an officer "may not ignore conclusively established evidence of the existence of an affirmative defense" in determining whether there is probable cause, the Fourth Amendment imposes no duty to investigate whether a defense is valid. *Id.* (quoting *Hodgkins ex. rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1061 (7th Cir. 2004)). Even if a plaintiff has a defense to the underlying criminal charge, probable cause to arrest may still exist. See A*rmstrong v. Village of Bellwood*, 18-cv-05919, 2021 WL 148802 *7(J. Durkin, N.D. Ill, January 15, 2021); *Kasey v.*

*McCulloh*, 09 C 1957, 2011 WL 1706092, *4 (J. Lefkow, N.D. Ill. May 5, 2011) (holding the plaintiff's defense to a resisting arrest charge did not preclude a finding that probable cause existed).

Plaintiff's own allegations establish that there was probable cause to arrest Plaintiff despite Plaintiff's self-serving statement that he was acting in self-defense. Detective Duehning was not obligated to accept Plaintiff's version of the incident as being true and was not required to disregard the clear probable cause that Plaintiff committed a battery.

### IV. DETECTIVE DUEHNING IS ENTITLED TO QUALIFIED IMMUNITY.

Even assuming *arguendo*, that the Court determines that Plaintiff has pled a valid cause of action against Detective Duehning under §1983 for false arrest, Detective Duehning would be entitled to qualified immunity. It is well settled that, pursuant to qualified immunity, public officials performing discretionary functions are shielded from civil liability unless their conduct violates a clearly established statutory or constitutional right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is a two-pronged analysis requiring the court to determine: 1) whether the record evidences a constitutional violation; and 2) if so, whether the right violated was clearly established at the time the violation occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As argued above, Plaintiff has failed to set forth sufficient allegations that Detective Duehning violated his constitutional rights. However, even if this Court determines that there are sufficient facts pled to establish that Detective Duehning's conduct violated Plaintiff's constitutional rights, it is not clearly established that a video depicting a battery by a school employee on a student is insufficient probable cause to arrest the employee for battery if the employee asserts that he was acting in self-defense. It is likewise not clearly established that a judicial finding of probable cause and the issuance of an arrest warrant based upon that finding, as occurred in the instant case, could constitute

a Fourth Amendment violation when an individual is detained or arrested pursuant to that valid warrant.

The plaintiff bears the burden of demonstrating that the right was clearly established at the time the alleged violation occurred. *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017). To be clearly established, the rights' contours must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right..." *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). Although the plaintiff need not point to an identical case finding the alleged conduct unlawful, a plaintiff must point to precedent placing the "statutory or constitutional question beyond debate." *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011)), or otherwise persuade the court that the conduct is so egregious and unreasonable that, notwithstanding the lack of an analogous decision, no reasonable officer could have thought he was acting lawfully. See e.g. *Wheeler v. Lawson,* 539 F.3d 629, 639 (7th Cir. 2008). The issue is not just whether the plaintiff's rights were established but, whether any reasonable official at the time in question would have known that their actions, or inaction would violate plaintiff's rights. *Serrano v. Guevara*, 315 F. Supp.3d 1026, 1038 (N.D. Ill. 2018).

An officer is entitled to qualified immunity in a false arrest case when, if there is no probable cause, "a reasonable officer could have mistakenly believed that probable cause existed." *Fleming v. Livingston Cnty, Ill,* 674 F.3d 874, 879 (7th Cir. 2012)(quoting *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)). This inquiry is referred to a "arguable probable cause." *Id.* Arguable probable cause is established when "a reasonable officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well-established law." *Id.* The determination of whether arguable probable cause existed is purely a question of law. *Cibulka v.*

*City of Madison,* 992 F.3d 633 (7th Cir. 2021). "The protection of qualified immunity applies regardless of whether the government official's error was a mistake of law a mistake of fact, or a mistake based on questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity provides "ample room for mistaken judgments" and protects all but the "plainly incompetent and those who knowingly violate the law." *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008)(quoting *Hunter v. Bryant,* 504 U.S. 224, 227 (1991)).

At the time the arrest warrant was issued for Plaintiff's arrest for the offense of battery, it was not clearly established, and a reasonable police officer would not have known, that there was a lack of probable cause to charge Plaintiff with battery, based on the information known to Detective Duehning. As acknowledged by Plaintiff, he admitted to Detective Duehing that he placed C.G. in a "bear hug", carried C.G. through the doors in that "bear hug" and fell on top of C.G. Dkt. 25, ¶16. While Plaintiff informed Detective Duehning that he was acting in self-defense, it is not clearly established, thereby negating Detective Duehning's qualified immunity, that Plaintiff's explanation for the battery not only had to be accepted as true, but also eliminated probable cause.

Because a reasonable officer could have believed that the video evidence, Plaintiff's admissions, and the witness statements were enough to demonstrate there was probable cause that Plaintiff committed a batter, there was, at the least "arguable probable cause" to arrest Plaintiff so the question of probable cause is not "beyond debate." At the most, Plaintiff has alleged that Detective Duehning was mistaken in his judgment that probable cause existed to support charging Plaintiff with battery. There are no allegations that Detective Duehning fabricated evidence, concealed evidence or otherwise engaged in any misconduct. The allegations are that Detective Duehning should have known that Plaintiff was acting in self-defense when he committed the battery

on C.G. and therefore, declined to seek charges against him. Even taking Plaintiff's allegation as true, that Detective Duehning was mistaken in his application of the facts or analysis of the evidence, the decision to charge Plaintiff can be classified as nothing more than a mistake for which Detective Duehning is entitled to qualified immunity.

Additionally, given the potentially contradictory holdings in *Bianchi* and *Lewis,* as explained in the section above, it is not clearly established that the issuance of an arrest warrant, based upon a finding of probable cause, could support a Fourth Amendment violation, and for that reason alone, Detective Duehning is entitled to qualified immunity.

### V. PLAINTIFF FAILS TO STATE A CAUSE OF ACTION FOR MALICIOUS PROSECUTION.

Under Illinois law, the elements of malicious prosecution are (1) commencement of criminal proceedings by the defendants; (2) termination of that matter in favor of the plaintiffs; (3) the absence of probable cause for the proceedings; (4) the presence of malice; and (5) resulting damages. *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009). The absence of any element bars a plaintiff from pursuing his claim. *Joiner v. Benton Community Bank,* 82 Ill.2d 40, 45 (1980). Probable cause to arrest Plaintiff for committing a battery would also defeat the state law claim for malicious prosecution. *Logan v. Caterpiller, Inc.,* 246 F.3d 912, 926 (7th Cir. 2001). As explained in Section III(B) above, there was more than sufficient probable cause that Plaintiff committed the offense of battery. That probable cause not only defeats Plaintiff's false arrest claim, but also his malicious prosecution claim.

Lastly, Plaintiff's malicious prosecution claim is factually insufficient because Plaintiff failed to allege any facts to suggest that Detective Duehning acted with malice. Detective Duehning interviewed witnesses, watched the video of the incident, and determined that there was probable cause to believe Plaintiff committed a battery on C.G. The fact that Plaintiff was found not guilty

of the charges after a bench trial, does not suggest that Detective Duehning acted with malice. Even assuming *arguendo,* that the Court determines that the issue of probable cause cannot be decided on this motion, the fact remains that Plaintiff does not allege that Detective Duehning acted with any sort of malice when he filed a criminal complaint against him. Plaintiff does not allege that Detective Duehning concealed evidence, manufactured witnesses statements, or fabricated any evidence. In the absence of malice, there is no cause of action for malicious prosecution.

VI. **JUDGEMENT SHOULD BE ENTERED IN FAVOR OF THE DEKALB COUNTY SHERIFF'S OFFICE.**

Given that none of the underlying claims against Detective Duehning survive, judgment should be entered in favor of the DeKalb County Sheriff's Office on the claims for respondeat superior and indemnification. See *Wrice v. Burge*, 187 F.Supp.3d 939, 957 (N.D. Ill. 2015); 745 ILCS 10/2-109. Additionally, the respondeat superior claim should also be dismissed to the extent that it is seeking to hold the DeKalb County Sheriff's Office liable on the §1983 false arrest claim. Local governments may not be held liable for constitutional violations under a theory of respondeat superior. *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015).

## CONCLUSION

WHEREFORE, Defendants Detective Josh Duehning and DeKalb County Sheriff's Office respectfully request that this Honorable Court grant their motion and enter judgment in their favor and against Plaintiff and order any and all further relief that this Court deems proper.

| | |
|---|---|
| Ekl, Williams & Provenzale LLC | Respectfully Submitted: |
| 901 Warrenville Rd., #175, Lisle, IL 60532 | /s/ Terry A. Ekl   #0727105 |
| tekl@eklwilliams.com | *Attorneys for Defendants* |